UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAEL CUELLAR | § | |
|             Plaintiff | § | |
| v. | § | |
| | § | |
| MICHAEL D. BERNARD, individually and | § | |
| In his official capacity as San Antonio City | § | NO.  5:13-cv-91 |
| Attorney, WILLIAM P. McMANUS, | § | |
| individually and in his official capacity as | § | |
| San Antonio Police Chief and the | § | JURY DEMANDED |
| CITY OF SAN ANTONIO | § | |
|             Defendants | § | |

**COMPLAINT**

The Plaintiff, Michael Cuellar, files this Complaint and, by way of claims against the Defendants, shows:

**1.0.   STATEMENT OF THE CASE**

1.1.  Michael Cuellar brings this civil action for damages, injunctive, and declaratory relief against the City of San Antonio, its City Attorney, Michael Bernard, and its Police Chief, William McManus.  The Defendants threaten Mr. Cuellar with arrest if he enters two of the most public of places in San Antonio, the San Antonio City Council Chambers and City Hall. The Defendants used a device known as a Criminal Trespass Letter to deprive Mr. Cuellar from exercising his First Amendment rights. To threaten Mr. Cuellar with arrest for the peaceful exercise of the most fundamental right afforded every United States citizen, the right to peaceably assemble, petition government, and seek redress for grievances therefrom, blatantly violates Mr. Cuellar's First Amendment rights.

.

1.2. To make matters worse, the Defendants use the threat of arrest to retaliate against Mr. Cuellar for his exercise of his First Amendment rights. And, as Defendants intend, their prior restraint and retaliation is having a devastating economic and emotional impact on Mr. Cuellar.

1.3. By this action, Mr. Cuellar seeks a declaration that the policy enacted and executed by the Defendants violates the First and Fourteenth Amendments, and is an unconstitutional prior restraint on his First Amendment rights. He also seeks injunctive relief to prohibit such conduct in the future, and damages to compensate him for the damages caused by the Defendants.

## 2.0. JURISDICTION AND VENUE

2.1. This civil action arises under 42 U.S.C. §1983 and seeks vindication of Mr. Cuellar's rights under the First and Fourteenth Amendments to the Federal Constitution. This Court has jurisdiction to provide monetary and injunctive relief, pursuant to 28 U.S.C. §§1331 and 1343(a)(3)-(4).

2.2. This Court has jurisdiction to provide declaratory and other relief, pursuant to 28 U.S.C. §§2201(a) and 2202.

2.3. All events took place in this judicial District and Division. Bernard and McManus reside in Bexar County, where the City of San Antonio is located. Thus, venue is proper, pursuant to 28 U.S.C. §1391(b).

## 3.0. PARTIES

3.1. **Michael Cuellar.** Michael Cuellar is an individual, who, at all times relevant hereto, resides in San Antonio, Texas.

3.2. **Michael D. Bernard.** Mr. Bernard is an individual who resides in Bexar County, Texas. Mr. Bernard may be served with service of process at his place of employment, the City Attorney's office at City Hall 100 Military Plaza, San Antonio, Texas 78205. At all relevant times, Defendant Bernard was City Attorney and acted under color of law and as agent, servant,

and employee of the City of San Antonio. As such, he was responsible for upholding the laws of the United States and Texas. Plaintiff sues him in his individual capacity and in his official capacity, for damages and injunctive relief.

3.3. **William P. McManus.** Mr. McManus is an individual who resides in Bexar County, Texas. Mr. McManus may be served with service of process at his place of employment, the San Antonio Police Department 315 South Santa Rosa, San Antonio, Texas 78207. At all relevant times, Defendant McManus was Police Chief and acted under color of law and as agent, servant, and employee of the City of San Antonio. As such, he was responsible for upholding the laws of the United States and Texas. Plaintiff sues him in his individual capacity and in his official capacity, for damages and injunctive relief.

3.4. **The City of San Antonio.** The City of San Antonio is a home rule municipality formed and governed under the laws of the State of Texas. The City may be served with service of process in this case by serving its Mayor, Julian Castro at the San Antonio City Hall 100 Military Plaza, San Antonio, Texas 78205. The Defendant City operates, and is responsible for, its police department and the city attorney. For purposes of this litigation, Bernard and McManus were final policymakers for the City of San Antonio. Plaintiff sues the City because its banning practice, custom, and *de facto* policy violate the U.S. Constitution.

**4.0. STATEMENT OF FACTS**

4.1. In August 2011, the City employed the Plaintiff as a full-time temporary employee. He functioned as a contract coordinator for the San Antonio Fire Department. He performed his duties for the City without complaint from August 2011 through January 2012, when, after an incident with a fellow employee, he was given the choice to either resign or be terminated from his employment. Mr. Cuellar chose to resign, and, on February 10, submitted his letter of resignation. Mr. Cuellar was never given specific reason that led the City to ask for his

letter of resignation, other than one incident with a co-worker, which was determined not to have any merit. At the time he resigned, Mr. Cuellar was eligible for rehire by the City of San Antonio, and was specifically advised so by Noel Horran, his superior at the Fire department.

4.2. After his resignation, Mr. Cuellar began to request information from the City of San Antonio relating to the reasons the City had given for asking him to resign, and relating to improprieties he had discovered during his employment at the fire department. Mr. Cuellar's first Public Information Act request was sent to City in June 2012, and was followed by several others between June and August 20, 2012.

4.3. The Plaintiff knew from his employment at the fire department that it had long been rumored that one of the department chiefs, although working for the Department of Public Safety, had never resigned from employment with the city. On August 20, 2012, Mr. Cuellar sent the City a public information request relating to, *inter alia*, information intended to disclose the employment status of Nimm Kid, the City's former Homeland Security Director. Chief Kid had recently been appointed chief of the Texas Division of Emergency Management by Steve McCraw, Director of the Texas Department of Public Safety, with concurrence of Governor Rick Perry. The terms of the agreement with Mr. Kid have been a matter of great public interest. In fact, just six months after the Plaintiff requested information intended to reveal Chief Kid's compensation, the *Austin American-Statesmen* published the details of the arrangements in a series of articles. http://www.statesman.com/ap/ap/texas/texas-emergency-chief-gets-223k-in-complex-deal/nT76r/. In addition, Mr. Cuellar requested the City to provide documents and information relating to terms of the agreement between the fire department's staff psychologist and the City, and other matters relating to possible improprieties within the department.

4.5. Between February 10, 2012 and August 31, 2012, the Plaintiff had no official contact with the City or its employees, other than to make numerous open records requests

relating to matters of public interest. On one occasion during that time period that Mr. Cuellar went to City Hall to review the records he requested. There were no incidents, no confrontations and no threats were made. He had not attended any City meetings, contacted any City employees, or done any act which could be construed as threatening or harassing.

   4.6. In fact, in the summer of 2012, the Plaintiff had been negotiating with the City, through Tri Starr Personnel Agency, to become a temporary employee of the City Public Works Department. The negotiations for a new position had gone well; and, on September 4, 2012, Bonnie Crellin, with Tri-Starr, sent Mr. Cuellar an e-mail stating, "You are all cleared to start [at his new job with the City's Public Works Department] tomorrow morning at 7:45am. Again, this is for the contract coordinator position that is paying $23.39/hr."

   4.7. However, on the very same day that Mr. Cuellar was informed that the City had rehired him, an uniformed, armed policemen appeared at the front door of his parents' home and delivered what has come to be called the "Criminal Trespass Letter," signed by the City Attorney and the Chief of Police, which states:

> You are hereby placed on notice that effective immediately, you are not to enter or remain on certain City-owned properties or buildings. This notice is made pursuant to Section 30.05 (Criminal Trespass) of the Texas Penal Code…. These prohibitions shall remain in effect until you are notified, in writing, by someone with authority to act on behalf of the City of San Antonio that these prohibitions have been lifted.

The Criminal Trespass Letter informed the Plaintiff that he was prohibited from entering the following public spaces: Fire Department Headquarters; Public Safety Headquarters; the Fire Department Fleet/Logistics Center; and the Fire Department Services building.

   4.8. More surprisingly, the Criminal Trespass Letter informed Mr. Cuellar that he could no longer set foot in the San Antonio City Hall or the Municipal Plaza Building. The City Hall and Municipal Plaza Building are places traditionally held in trust for the public's use, and, at

least for the purposes of San Antonio's historic City Hall, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions for over 100 years. Both buildings are located on the historic Main Plaza, which has served as a traditional public forum for over 200 years. These are the very buildings where Mr. Cuellar would have to go to complain about issuance of the Criminal Trespass Letter. Whether intended or not, the effect of the Criminal Trespass Letter was to expose Mr. Cuellar to arrest if he attempted to go to a City Council meeting to complain about the Criminal Trespass Letter. If he did go to Council to complain, he could be imprisoned up to six (6) months and fined $2,000.

4.9.   Prior to receiving the Criminal Trespass Letter, Mr. Cuellar had no idea that such letters existed. In fact, the City had kept the fact that it had adopted a policy which allowed them to arrest citizens for attending public meetings a secret. There is apparently no written policy regarding when the City's two highest ranking criminal justice professionals can execute the policy to arrest persons they seek to exclude from attending public meetings. The City has never revealed any written guidelines that would fetter the unbridled discretion of the Defendants to determine that a citizen can be arrested for merely entering a traditionally public forum.

4.10.   Since the City's secret policy of banning any citizen it chooses from public participation has come to light, the City has attempted to explain its policy. Unfortunately for Mr. Cuellar, the City's attempts to explain its actions have only added to the economic damage done to him. As if it weren't bad enough that Mr. Cuellar, who had a promising career as a public employee, had been publicly threatened with arrest if he appeared for his new job at the City, the Defendants began a public campaign to justify their actions by defaming Mr. Cuellar and wrongly accusing him of being a threat to public safety.

4.11.   The Defendant McManus made the statement, which appeared in the press and on-line, that:

> A Criminal Trespass Warning letter can be issued in direct response to a threat, threatening behavior, and/or harassment wherein repeated contacts by an individual are made thus creating an environment of fear. Criminal Trespass Warning letters are typically issued when the behaviors previously mentioned are clear and obvious.

Since the Defendants have only publicly identified two such criminal trespass letters, the obvious inference to be drawn by the public, and Mr. Cuellar's prospective municipal and governmental employers, is that he has engaged in "…threat[s], threatening behavior, and/or harassment wherein repeated contacts by an individual are made thus creating an environment of fear."

4.12. Defendant Bernard also has aggravated the injury done to Mr. Cuellar by the adoption of the unconstitutional policy represented by the Criminal Trespass Letter. First, Bernard insinuated on the radio that the ban issued to Mr. Cuellar would only prohibit him (or any other person banned) from entering city property "…unless they have an appointment or business there," which is simply not true. But more damaging to the Plaintiff, Bernard announced to the public, on the radio, that the City would only issue the Criminal Trespass Letter "…in instances where people, including the police department, feel there is a real threat to people who work here or to visitors here…if the police department and others come to the conclusion that someone is a threat that is sufficient for us. That's all it takes.…" The clear insinuation is that Mr. Cuellar was, in August 2012, "a real threat to people."

4.13. Since the issuance of the Criminal Trespass Letter, Mr. Cuellar has not been to any of the public places from which he was banned. The City would only make the records he requested available for viewing under armed guard, first at the San Antonio Library, and later at the Frio Street Police Sub-Station where Mr. Cuellar was only able to review records behind security checkpoints. Again, the inspection was supervised by an armed guard.

4.14. Mr. Cuellar has repeatedly asked the Defendants how long his ban would continue, if there any appeal from the ban, and why he was banned. Despite his repeated requests

and those of others, including the media, even under the state's Public Information Act, the Defendants never responded with appropriate information and adamantly refuse to do so. Nor have they ever provided Mr. Cuellar with an opportunity to appeal from the indefinite ban, and have steadfastly refused to do so.

4.15. Since issuing the Criminal Trespass Letter, the Defendants have refused to lift or limit the ban contained therein, in retaliation for the Plaintiff's continued participation in First Amendment activities. It is no coincidence that, during the time the City refused to lift the unconstitutional ban or even tell the Plaintiff why the ban was being imposed, the Plaintiff was prohibited from participating and influencing some of the most controversial events occurring in San Antonio, in which he was direct participant. In October 2012, the Plaintiff found himself in the midst of an ethics controversy relating to Pat Giovanni. *See* New Ethics Complaints Filed at City Hall, http://www.mysanantonio.com/news/local_news/article/New-ethics-complaints-filed-at-City-Hall-4051313.php.

4.16. During this time period, a disinterested attorney acting for the City found that Mr. Cuellar was not so dangerous that he could not briefly attend an ethics committee meeting for limited purposes. The letter sent by that attorney indicated that the ban could be "temporarily lifted" by the City whenever it suited their purpose. However, even in light of the reassurance given by an attorney not involved with the issuance of the Criminal Trespass Letter, the Plaintiff still feared arrest if he attended any such meetings.

4.17. The City is intentionally using the Criminal Trespass Letter to keep the Plaintiff from attending any meetings with elected officials or their staff regarding the very public events surrounding the ethics controversy. At no time during this continuing controversy has the Plaintiff been allowed to attend any City Council Meetings. He never had the chance to put the facts occurring in the City's ethics crisis before the City Council in the citizens-to-be-heard

section of any City Council Meeting. He could not appear before the City Council even to complain of his banishment. The City adamantly has refused to tailor the ban to remove the chilling effect of the letter, and continues the ban indefinitely to retaliate against the Plaintiff's involvement in the ethics controversy.

4.18.   Mr. Cuellar has an undergraduate degree in Political Science and a Master's degree in Public Administration. He is a Certified Texas Procurement Manager by the Texas Comptroller. He has been employed in the public sector for approximately seven years, and has spent his active working life in public service.

4.19.   Since being banned by the Defendants and since their appearing in the media insinuating he was dangerous and a threat to city employees, Mr. Cuellar has been unable to find employment in his chosen profession. Given the seriousness of the claims made by the Defendants to justify their unconstitutional action, it is unlikely that he will be able to find suitable employment in his chosen profession in the near future.

4.20.   The Defendant City apparently as no written procedures determining how they ban unwanted citizens from the public forum, although, upon information and belief, banning has become a settled practice and custom and *de facto* policy of the City.

4.21.   In a recent radio interview, the Mayor acknowledged the existence of the official policy of banishment and that the Defendant McManus, as the chief of police, plays a major role in promulgating and executing the City's unconstitutional policy. According to the Mayor, the City intended to review the City's banishment policy, which he characterized as "informal."

4.22.   The ban imposed by the Criminal Trespass Letter is not a reasonable time, place, and manner restriction. In fact, it is the opposite, a totally unreasonable restriction without precedent or justification in federal law. It is an unconstitutional prior restraint on the Plaintiff's First Amendment Rights.

## 5.0. CAUSES OF ACTION

### 5.1. First Cause of Action: Violation of First Amendment Rights (42 U.S.C. §1983)

5.1.1. Under color of state law and through a municipal policy or custom, the Defendants have deprived, and continue to deprive, Mr. Cuellar of his right to freedom of expression, including through expressive conduct, to peaceably assemble, and to freely petition for redress of grievances under the First Amendment.

5.1.2. Defendants' policy of banning individuals from City Hall is a prior restraint on the exercise of these rights, and its application, and threatened application, to Mr. Cuellar exercising such rights at City Hall and in the Municipal Plaza Building, both traditional public forums. The ban is not narrowly tailored to serve any compelling governmental interest and fails to leave open ample alternative channels of communicating Plaintiff's messages.

5.1.3. It was only after Mr. Cuellar requested that the City disclose potentially embarrassing information about its financial relationship with Nimm Kid, that he was banned.

5.1.4. The selective use of the policy by the City demonstrates that the policy is not content-neutral. Rather, in application, the policy permits and encourages official discrimination among speakers based on the content of their speech and does so without being narrowly tailored to advance a compelling governmental interest. Further, to the extent that Defendants assert the policy is in fact applied only to instances of particular types of conduct, such as publicly stated by the Defendants, such assertion is merely pretext for content discrimination against Plaintiff.

5.1.5  Additionally, Defendants' policy respecting issuance of criminal trespass notices banning citizens from City Hall and the Municipal Plaza building is unconstitutionally overbroad and vague, delegating to a wide range of city employees effectively unrestrained discretionary authority to ban any individual from any or all city property for substantial periods, even

permanently, merely because that individual's conduct is subjectively viewed by a city employee as unacceptable for any reason.

5.1.6.   As Plaintiff's experiences show, the city's criminal trespass notice policy sweeps within it an unreasonably broad range of protected First Amendment activity that, despite enjoying heightened protection under federal law, could nonetheless be subjectively viewed as unacceptable by city employees lacking any further guidance on implementation of the policy.

5.1.7.   Further, the threat of being banned from City Hall imposes a significant chilling effect on any individual who wishes to exercise the First Amendment rights of free expression and assembly but reasonably fears significant interference with the ability to access and interface with city government should that individual run afoul of the vague prohibitions of the city's policy, as interpreted by city employees delegated an immense degree of discretion.

5.1.8.   The unconstitutional overbreadth and vagueness of the city's policy, coupled with its chilling effect on First Amendment rights, renders the policy facially unconstitutional and invalid in all applications.

**5.2.  Second Cause of Action: Official Retaliation in Violation of First Amendment Rights (42 U.S.C. §1983)**

5.2.1.   Defendants' actions to ban Mr. Cuellar from City Hall and the Municipal Plaza Building constitute unlawful official retaliation against him for his exercise of his First Amendment rights to free expression, peaceable assembly, and petitioning for the redress of grievances. The City has also refused to limit or lift the ban in order to retaliate against the Plaintiff for his First Amendment activities.

5.2.2.   The Defendants' unlawful retaliation has caused economic injury to Mr. Cuellar and caused him to suffer mental pain and anguish.

**5.3.  Third Cause of Action: Violation of Due Process (42 U.S.C. §1983)**

5.3.1. Under color of state law and through *de facto* municipal policy, practice, or custom, Defendants have deprived, and continue to deprive, Mr. Cuellar of his right to substantive due process of law under the Fourteenth Amendment.

5.3.2. The Plaintiff possesses a fundamental liberty interest, protected by the Due Process Clause, in entering and remaining in City Hall and the Municipal Plaza Building for the purposes of expressing protected speech or engaging in any of the myriad governmental-individual interactions that regularly take place at City Hall and city offices.

5.3.3. Mr. Cuellar likewise has a fundamental liberty interest, protected by the Due Process Clause, in being in public places, like City Hall and the Municipal Plaza Building.

5.3.4. Defendants' banning of Mr. Cuellar from those areas unconstitutionally infringes those protected fundamental liberty interests because it burdens those interests and is not narrowly tailored to advance a compelling governmental interest.

**5.4. Fourth Cause of Action: Violation of Due Process (42 U.S.C. §1983)**

5.4.1. Because Defendants gave Mr. Cuellar no reasons for an indefinite ban from the city properties and have no standards for such a ban (other than apparently their whim), no hearing thereon, and no appeal therefrom, they denied him procedural due process of law, unconstitutionally depriving him of his First Amendment rights and depriving him of the temporary employment for which the City had hired him.

**6.0. DECLARATORY RELIEF**

6.1. Mr. Cuellar seeks declaratory relief that Defendants violated his rights under the First and Fourteenth Amendments, as described above.

6.2. Defendants have deprived Plaintiff of his federal constitutional rights to freedom of expression and due process of law, to peaceably assemble, and to petition their government for redress of grievances, causing irreparable harm to Plaintiffs. Through continued enforcement of

their policy respecting issuance of criminal trespass notices, the Defendants threaten further violations of those same rights.

6.3   Mr. Cuellar is thus entitled to a declaration, pursuant to 28 U.S.C. §2201, that his rights arising under the Constitution have been violated by the Defendants' actions and that the City's policy is facially unconstitutional and as applied to him.

## 7.0. DAMAGES

7.1.   Pursuant to 42 U.S.C. §1983, Mr. Cuellar seeks from damages the Defendants as allowed by law for the deprivation of his constitutional rights, and retaliation against him for the exercise of his First Amendment rights. Mr. Cuellar has suffered as a result of such deprivations, and seeks appropriate monetary damages for the loss of employment with the City, for the loss of past and future earnings, damage to his earning capacity, for the damage to his reputation, for other economic damages, and for mental anguish, and/or emotional distress.

7.2.   Mr. Cuellar seeks such damages against Defendants, jointly and severally, for the injuries that he has suffered at their hands. Because of the willful, wanton, and malicious nature of the conduct of Defendants Bernard and McManus against him, in utter disregard for his rights, Mr. Cuellar claims actual damages, jointly and severally, and punitive damages against each of them, in their individual capacities.

## 8.0. INJUNCTIVE RELIEF

8.1. Mr. Cuellar continues to be deprived of his federal constitutional rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment, causing him irreparable harm and threatening additional, immediately impending irreparable injuries.

8.2.   Defendants continue to maintain their *de facto* policy, practice, and custom of banning Mr. Cuellar from returning to City Hall or city offices in violation of 42 U.S.C. §1983. Plaintiff thus is entitled to an injunction, preventing Defendants and their agents, employees, and

any other persons or entities acting on their behalf, from further enforcement of the banning order complained of herein.

8.3. Mr. Cuellar continues to be deprived of his federal constitutional rights under the First and Fourteenth Amendments as a result of Defendants' acts in retaliation against his exercise of his constitutional rights, causing him irreparable harm.

8.4. The Defendants' past practice of retaliation, in violation of 42 U.S.C. §1983, provides Mr. Cuellar with a reasonable basis to fear additional retaliatory acts by Defendants, based on his planned future exercise of his constitutional rights.

8.5   Mr. Cuellar thus is entitled to an injunction preventing Defendants and their agents, employees, and any other persons or entities acting on their behalf, from engaging in any retaliatory acts against him, based on his past, present, or future exercise of rights protected under the First and Fourteenth Amendments or based on the filing or prosecution of this or any other suit seeking to enforce his rights.

## 9.0.   NO QUALIFIED IMMUNITY

9.1. Because the First and Fourteenth Amendment law under which this suit is brought has long been well-settled in the context of the facts alleged herein, neither Defendant Bernard nor Defendant McManus are entitled to claim qualified or good faith immunity.

## 10.0.   ATTORNEYS' FEES

10.1.   Mr. Cuellar seeks attorneys' fees and costs, pursuant to 42 U.S.C. §1988, and any other statutory authority which may allow such fees.

## 11.0.   PRAYER FOR RELIEF

Mr. Cuellar respectfully prays that this Court:

11.1.1.   Enter declaratory judgment that, acting under color of law and with authority, Defendants intentionally, and with complete and deliberate indifference

to Mr. Cuellar's First and Fourteenth Amendment rights, deprived him of those rights;

11.1.2. Enter temporary and permanent injunctions against Defendants, enjoining them from further banning Mr. Cuellar from city premises, as described herein, and from retaliating against Plaintiff in the future for the past, present, or future exercise of his First and Fourteenth Amendment rights or for prosecuting this action to enforce is rights;

11.1.3. Award actual damages to Mr. Cuellar, against all Defendants, jointly and severally, together with pre-judgment and post-judgment interest;

11.1.4. Enter judgment for punitive damages against Defendants Bernard and McManus, individually, to punish them for their clearly unconstitutional misconduct and in an amount sufficient to deter them and others from engaging in similar misconduct in the future;

11.1.5. Order Defendants to pay the Plaintiff's attorneys' fees and costs; and,

11.1.6. Grant all other and additional relief to which Mr. Cuellar may be entitled, at law or in equity.

Dated: February 11, 2013

JURY DEMANDED

                                              Respectfully submitted,

James C. Harrington
Texas Bar No. 09048500
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741-3438
(512) 474-5073
(512) 474-0726 (FAX)

LAW OFFICE OF PETER J. STANTON
Riverview Towers, Suite 1350
111 Soledad
San Antonio, Texas 78205
(210) 472-0500
(210) 472-0515 (FAX)

                                                   /s/
PETER J. STANTON
SBN: 19054500

ATTORNEYS FOR PLAINTIFF