# In the United States District Court for the Western District of Texas

| | |
|---|---|
| MICHAEL CUELLAR | § |
| | § |
| v. | § |
| | §   SA-13-CV-91-XR |
| MICHAEL D. BERNARD, ET. AL. | § |

## ORDER

On this day came on to be considered Cuellar's Motion for Preliminary Injunction (docket no. 4).

### Background

Michael Cuellar is a former employee of the City of San Antonio. He began his employment with the City in August 2011 as a temporary contract coordinator in the Fire Department. He became a full-time employee on December 10, 2011.

On January 24, 2012, Heidi Heridia, a City of San Antonio employee "witnessed Mr. Cuellar lose his temper and threaten physical violence upon other coworkers." Ms. Heridia thereafter completed a "Violence in the Workplace Report" on February 1, 2012. The report stated that Cuellar threatened to strangle and kill employees in the purchasing office because his requests had not yet been processed. The report also stated that other co-workers had noted that Cuellar becomes agitated and "worked-up about issues." From January 24 through February 10, 2012, Cuellar's supervisor, Claude Overman, witnessed "emotional and threatening behavior" by Cuellar and reported the conduct to management officials. On February 10, 2012, Deputy Fire Chief Noel Horan and Deputy Fire Chief Carl Wedige met with Cuellar to discuss Cuellar's "actions and outbursts that were causing several other employees to be fearful of him." Cuellar

was given the option of resigning his employment, in lieu of his probationary employment being terminated.  All parties agree that Cuellar tendered his resignation.

Several months later, from June 25 through August 14, 2012, Cuellar began sending to the City various requests under the Texas Public Information Act for "all" emails (apparently without regard to content or subject) sent by the individuals identified above.  Cuellar was provided some documents by the City and on August 7, Cuellar contacted by social media at least one employee identified in the documents stating:  "I hope it was worth betraying a friend."

On or before August 20, 2012, Cuellar send an open records request to the City seeking documents related to the use of credit cards being used by a Fire Chief, payments made towards a lease or office space used by a staff psychologist and retirement pay being issued to former Deputy Fire Chief Nimm Kidd.

Sometime during August various deputy Fire Chiefs and the Fire Chief met with the City Attorney and/or Police Chief and expressed concerns that Cuellar posed a safety threat to employees.  Other than recount what transpired some six months earlier, no new information regarding Cuellar being a safety threat was provided.

On August 31, 2012, Police Chief McManus and City Attorney Bernard decided to issue a notice of Criminal Trespass[1] pursuant to Texas Penal Code § 30.05.[2]  The notice was effective immediately and would remain in effect until such time as Cuellar was notified in writing that the prohibitions would be lifted.  The notice was served upon Cuellar on September 4.

---

[1] The notice stated, in part, that Cuellar was "not to enter or remain on certain City-owned or City leased properties and buildings."  The notice identified the following buildings as prohibited;  Fire Department Headquarters located at 115 Auditorium Circle, Public Safety Headquarters at 315 S. Santa Rosa, the Fleet Logistics Center at 4531 S. Zarzamora, another Fire Department building located at 300 S. Callaghan, City Hall, and the Municipal Plaza Building.

[2] "(a) A person commits an offense if the person enters or remains on or in property of another, including residential land, agricultural land, a recreational vehicle park, a building, or an aircraft or other vehicle, without effective consent and the person: (1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so…. (d) An offense under this section is: (1) a Class B misdemeanor…."

On October 10, 2012, Cuellar filed ethics complaints[3] against various city employees regarding their use of suites in the Alamodome and Cuellar filed additional ethics complaints against other city employees regarding a former deputy city manager negotiating employment with an entity called Centro Partnership.[4]

Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983 in this Court on February 11, 2013, almost six months after the notice of criminal trespass was issued.  In the Complaint, Cuellar alleges that the City, City Attorney, and Police Chief, by issuing the notice are violating his First Amendment rights to peacefully assemble, petition his government, and seek redress for grievances.  Plaintiff alleges that the policy of banning him from City Hall constitutes a prior restraint on his First Amendment rights and also constitutes impermissible viewpoint discrimination and retaliation[5] for his previous First Amendment activity.  Further, he alleges that he possesses a liberty interest in being able to enter City Hall and the Municipal Plaza Building and the bar deprives him of procedural or substantive due process.

### Standard for Preliminary Injunction

A movant must satisfy each of four traditional criteria in order to be entitled to a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest.  *Opulent Life Church v. City of Holly Springs, Miss*., 697 F.3d 279,

---

[3] Pursuant to Section 141 of the City Charter any person who believes there has been a violation of the City's ethics laws may file a sworn complaint with the City Clerk.  The City's Ethics Review Board has the jurisdiction to review such a complaint.

[4] Notwithstanding the Notice of Criminal Trespass, Cuellar was invited to attend the Ethics Review Board hearing and make a statement.  Cuellar voluntarily chose not to attend.  Cuellar's testimony on the witness stand that he was unaware that he could attend is directly contradicted by his email dated November 11, 2012.

[5] Cuellar alleges that the ban caused him the loss of a subsequent opportunity to work as a contract employee for the City.  Ironically, while Cuellar presents himself as a private citizen watchdog patrolling corruption at City Hall, Cuellar was using his girlfriend, a City employee, to direct the outside vendor to offer him this contract employment. Cuellar and his girlfriend kept the outside vendor in the dark about their relationship.

288 (5th Cir. 2012).  A preliminary injunction is an extraordinary remedy that "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012) (quotation and citation omitted).

### A.  Substantial Likelihood of Success on the Merits

1. 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, neither side disputes that Defendants were acting under color of state law. Thus, the Court must determine whether Defendants violated a right secured by the Constitution.

a. First Amendment Violation

i. Restriction of Access to City Hall

The Supreme Court has used a three-step approach to determine whether a First Amendment right has been violated. The first step is to determine whether the claim involves protected speech, the second step is to identify the nature of the forum, and the third step is to assess whether the justifications for exclusion from the relevant forum satisfy the requisite standard. *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc*., 473 U.S. 788, 797 (1985). Here, Plaintiff alleges that he is being deprived of "his right to freedom of expression, including through expressive conduct, to peaceably assemble, and to freely petition for redress of grievances under the First Amendment."  Plaintiff's right to freedom of expression is protected by the First Amendment. The Court therefore proceeds to the second inquiry.

"For First Amendment purposes, '[t]he existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue.'" *Chiu v. Plano Independent School Dist.*, 260 F.3d 330, 344 (5th Cir. 2001) (per curiam) (*quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983)). The Supreme Court has distinguished between traditional public forums, designated public forums, limited public forums, and non-public forums. *See id*. at 344-47.

The state's efforts to exclude speakers from traditional and designated public forums "are subject to rigorous first amendment scrutiny." *Chiu*, 260 F.3d at 344. "For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry*, 460 U.S. at 45. "The state may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id*.

Case law supports a finding that public meetings constitute designated public fora. *See, e.g., Mesa v. White*, 197 F.3d 1041, 1044 (10th Cir. 1999); *Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir. 1989) ("[T]he city commission designated their meeting a public forum when the commission intentionally opened it to the public and permitted public discourse on agenda items."). Thus, in this case, to pass constitutional muster the ban on Plaintiff must, among other requirements, be narrowly tailored.

There is no indication that the ban has been narrowly tailored. The criminal trespass notice completely bans Plaintiff's presence at City Hall and the Municipal Plaza Building at all times and for all purposes. At least one federal court of appeals opinion supports a finding that

banning an individual from speaking at a city council meeting constitutes a First Amendment violation. *See Surita v. Hyde*, 665 F.3d 860 (7th Cir. 2011) (holding that a mayor violated an individual's First Amendment rights when the mayor intentionally barred the individual from speaking at a city council meeting).

> ii. Prior Restraint

"When public officials are given the power to deny use of a forum in advance of actual expression or association, the danger of prior restraints exists." *Collins v. Ainsworth*, 382 F.3d 529, 539 (5th Cir. 2004). "[A] system of prior restraint avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system." *Id.* (*quoting Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975)). "It is thus clearly established that if public officials abuse their discretionary power to deny in advance use of a forum for First Amendment—protected expression without enacting proper safeguards, this constitutes an impermissible prior restraint." *Id.*

Here, there is no evidence that any procedural safeguards were employed when determining whether to issue the criminal trespass notice. Defendants rely on *Hill v. Colorado*, 530 U.S. 703 (2000), for support of their argument that the criminal trespass notice is not a prior restraint because the notice only regulates the place where Plaintiff's speech may occur rather than the content of what Plaintiff may say. However, in *Hill*, the Supreme Court noted that under the statute at issue in that case, "no channel of communication [was] foreclosed" and "[n]o speaker [was] silenced." *Id.* at 734. In this case, by contrast, a channel of communication—to wit, Plaintiff personally speaking at the city council meeting—is being completely foreclosed.

> b. Fourteenth Amendment Violation
>> i.     procedural due process

"To establish a violation of the Fourteenth Amendment's guarantee of procedural due process, a plaintiff must prove that (1) he was deprived of a life, liberty, or property interest (2) without the process that was due." *Saucedo-Falls v. Kunkle*, 299 F. App'x 315, 319 (5th Cir. 2008) (per curiam) (*citing Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 & n.3, 542 (1985)). "At a minimum, due process requires that notice and an opportunity to be heard 'be granted at a meaningful time and in a meaningful manner.'" *Gibson v. Texas Dept. of Ins.—Div. of Workers' Compensation*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)); *see also Systems Contractors Corp. v. Orleans Parish School Bd.*, 148 F.3d 571, 575 (5th Cir. 1998) ("At a minimum, notice and a hearing are required before an individual may be deprived of his property or liberty interests." (emphasis added) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976))). "[T]he specific process due in a particular situation is found by balancing three factors: (1) the private interest that will be affected by the official's actions, (2) the risk of an erroneous deprivation of that private interest and the probable value, if any, that additional procedural protections would provide, and (3) the interest that the government seeks to achieve." *Systems Contractors Corp.*, 148 F.3d at 575.

Courts have held that individuals have a liberty interest in being in a public place of their choice. *See City of Chicago v. Morales*, 527 U.S. 41 (1999) (plurality opinion) ("[I]t is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is a part of our heritage" (citations and internal quotation marks omitted)); *Kennedy v. City of Cincinnati*, 595 F.3d 327, 336 (6th Cir. 2010) (holding that the plaintiff had a liberty interest "to remain in a public place of his choice"); *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (holding that the plaintiffs

"have a constitutionally protected liberty interest to be in parks or on other city lands of their choosing that are open to the public generally").

Here, Plaintiff has an interest in being in City Hall during publically accessible hours and to exercise his First Amendment rights. There is no indication that Plaintiff was afforded a meaningful opportunity to be heard before the criminal trespass notice was issued that deprived him of this interest.

### ii. Substantive Due Process

"To establish a violation of the Fourteenth Amendment's guarantee of substantive due process, a plaintiff must prove that (1) he was deprived of a life, liberty, or property interest (2) in an arbitrary and capricious manner." *Saucedo-Falls v. Kunkle*, 299 F. App'x 315, 319 (citing *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)). "[I]n order to state a viable substantive due process claim the plaintiff must demonstrate that the state official acted with culpability beyond mere negligence." *McClendon v. City of Columbia*, 305 F.3d 314, 325 (5th Cir. 2002). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id*. (*quoting County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

Neither side discusses the issue of substantive due process in their briefs and the Court need not address the issue in order to reach its holding on Plaintiff's motion for a preliminary injunction.

### B. Irreparable Injury

Defendants argue inasmuch as Plaintiff waited for almost six months prior to filing this lawsuit, he cannot establish any irreparable injury that demands extraordinary relief at this stage of the proceedings. Although Plaintiff may have decided to forego challenging his First Amendment rights during that period, the Supreme Court has stated that the "loss of First

Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Palmer v. Waxahachie Independent School Dist.*, 579 F.3d 502, 506 (5th Cir. 2009).

    C.  Balancing

Defendants argue that Cuellar poses a threat to the safety of its employees.  No doubt that Cuellar has acted rudely and has been verbally abusive towards some of his fellow employees; however, the Defendants have failed to tender any persuasive evidence that Cuellar poses any physical threat.  While employed at the City, Cuellar was not placed on leave or punished, and no law enforcement officer was summoned to the workplace.  Cuellar was not discharged, but rather allowed to resign in lieu thereof.  He did not attempt to reenter his former work site.  Cuellar, however, has engaged in behavior that is either sophomoric or constitutes more than a nuisance to those law enforcement officials charged with guarding our elected officials.[6]

On the other side of the scale, Plaintiff is being deprived of rights afforded to him by the First Amendment.

    D.  The Injunction will not Disserve the Public Interest

As indicated above, the Defendants argue that Cuellar poses a threat to the safety of its employees.  The Defendants rely upon this same concern for their argument that granting a preliminary injunction would disserve the public interest.  Again, however, the Defendants have not produced any persuasive evidence demonstrating that Cuellar formerly posed a physical threat or poses a physical threat at this time.

---

[6] Cuellar sought fingerprints, photographs and ingress/access data and times of various officials.  He testified he sought this information as a watchdog to ensure that officials were working.  The Court finds this testimony unpersuasive.  Indeed, Cuellar later admitted the requests were overly broad and improper and now understands how his requests could have been misconstrued by officials.

**Conclusion**

In light of the foregoing, the Court finds that Plaintiff has satisfied each of the prerequisites for obtaining a preliminary injunction. Accordingly, Plaintiff's motion for a preliminary injunction is GRANTED.

Defendants are enjoined from enforcing the criminal trespass letter during the pendency of this litigation. Plaintiff may access city premises as an ordinary member of the public would do. However, Plaintiff is not afforded any greater access by this ruling.

SIGNED this 27th day of March, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE